1  BJ DAVIS

2  Pro Se

3  1155 S. Power Rd., Ste. 14

4  MESA :, AZ 85206

5  Tel: (480) 444-2414

6  E-mail: ReelMovies@aol.com

7

8

FILED ✓    ___ LODGED
___ RECEIVED    ___ COPY

OCT 2 2 2008

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ S  DEPUTY

9      **UNITED STATES FEDERAL DISTRICT COURT**

10

11              **OF ARIZONA**

12    ─────────────────────────────────────

13

14    **BJ DAVIS**                    |    Case No.

15                                    |    **CV '08 01942 PHX - MEA**

16                                    |

17                                    |    **COMPLAINT UNDER**

18                                    |     **RACKETEER**

19                                    |     **INFLUENCED CORRUPT**

20    **PLAINTIFF**                   |     **ORGANIZATIONS**

21                                    |    **(RICO)**

22                                    |

23         **V.**                     |    **JURY TRIAL DEMANDED**

24                                    |

25                                    |

26    **ESTATE of SALVATORE "BILL"**

27

28                                    1

| | |
|---|---|
| 1 | BONANNO, ROSALıE |
| 2 | BONANNO, an individual, |
| 3 | MICHAEL R. SAQUELLA, aka |
| 4 | PALOMA, an individual, |
| 5 | BIG SCREEN    ENTERTAINMENT |
| 6 | GROUP, a Nevada Corp., |
| 7 | KIMBERLY DAWN LEBEL aka |
| 8 | KATES, an individual, |
| 9 | MICHAEL GARDINER, an |
| 10 | individual, HERBERT KAUFER, |
| 11 | an individual, JEFFREY J. DEAL, |
| 12 | an individual, JAMES WONG, |
| 13 | an individual, |
| 14 | ANTHONY TARANTOLA, |
| 15 | an individual, COLONIAL STOCK |
| 16 | TRANSFER COMPANY,  a corp. of |
| 17 | unknown origin, FIRST AMERICAN |
| 18 | TRANSFER, a corp. of unknown |
| 19 | origin, NOEL KENDALL, |
| 20 | an individual, HARKINS |
| 21 | THEATERS, LLC, a Arizona |
| 22 | Corp., JONATHAN  DIMOCK, |
| 23 | aka CHUCK BANKS, |
| 24 | AMAZON.COM, an entity of |
| 25 | unknown origin, THE INTERNET |
| 26 | MOVIE DATABASE.COM, an entity |
| 27 | |
| 28 | 2 |

| | |
|---|---|
| 1 | of unknown origin, WELLS FARGO |
| 2 | BANK, a corp. of unknown origin, |
| 3 | BRIAN DRISCOLL, |
| 4 | an individual, GLORIA LUNA, |
| 5 | an individual, DAVID STOCKER, |
| 6 | an individual, STEVE BERG, |
| 7 | an individual, PHIL YOUNG, |
| 8 | an individual, BRION KOS |
| 9 | an individual, BEST DOMAIN |
| 10 | AND WEB HOSTING, a Corp. of |
| 11 | unknown origin, |
| 12 | PINE CANYON RECORDINGS, |
| 13 | LAWRENCE KAPLAN, an individual, |
| 14 | MALLVIEW CINEMAS, a Corp. of |
| 15 | unknown origin, COMANCHE |
| 16 | PROPERTIES, a Corp. of unknown |
| 17 | origin, HALFWAY TO TUCSON |
| 18 | PRODUCTIONS, a Corp. of |
| 19 | unknown origin, SCREEN ACTORS |
| 20 | GUILD, an entity of unknown origin, |
| 21 | ALAN ROSENBERG, |
| 22 | an individual, ELIZABETH |
| 23 | MOSELY, an individual, |
| 24 | SCREEN ACTORS GUILD PENSION |
| 25 | & HEALTH PLAN, |
| 26 | an entity of unknown origin, |
| 27 | |
| 28 | 3 |

| | |
|---|---|
| 1 | BRUCE DOW, an individual, |
| 2 | PEGGY CLARK, an individual, |
| 3 | ROXANNE FITZGERALD, |
| 4 | an individual, ROBERT BUSH, an |
| 5 | individual, PETER DICKINSON, |
| 6 | an individual, |
| 7 | LOS ANGELES POLICE |
| 8 | DEPARTMENT, an entity of |
| 9 | unknown origin, NATE WILLIAMS, |
| 10 | an individual, KEITH WILLIAMS, |
| 11 | an individual, JOHN BAGNOLI, |
| 12 | an individual, |
| 13 | FEDERAL BUREAU OF |
| 14 | INVESTIGATION, an agency of the |
| 15 | United States Government, |
| 16 | JOHN QUINN, an individual, |
| 17 | JOHN VINING, an individual, |
| 18 | SHERRY MacALLISTER, an |
| 19 | individual, ARNIE MEDRANO, |
| 20 | an individual, RAY PITESKI, |
| 21 | an individual, MIKE ESCOTT, |
| 22 | an individual, MARK HUNTER, an |
| 23 | individual, INTERNAL REVENUE |
| 24 | SERVICE, an agency of the United |
| 25 | States Government, |
| 26 | ANGIE ORTANEZ, an individual, |
| 27 | |
| 28 | 4 |

| | |
|---|---|
| 1 | SUSAN BOUTWELL, an individual, |
| 2 | CAROLINE CLARK, an individual, |
| 3 | MICHELLE KENNEY, an individual, |
| 4 | RAGING BULL, an entity of |
| 5 | unknown origin, INVESTORS HUB, |
| 6 | an entity of unknown origin, |
| 7 | BOB ZUMBRUNNEN, an individual, |
| 8 | DAVID FRANCIS ZAPPONE aka |
| 9 | JOHNNY RAMBOVA, an individual, |
| 10 | FRANCIS ZAPPONE, SR., |
| 11 | an individual, JIM JACOB, an |
| 12 | individual, STEPHEN ECKELBERRY |
| 13 | an individual, ROSSLYN HORNSBY, |
| 14 | an individual, MICHAEL |
| 15 | MANASSERI, an individual , |
| 16 | BELLACOSA, INC. a corp. of |
| 17 | unknown origin, MORE THAN ONE |
| 18 | PRODUCTIONS, a NV Corp., |
| 19 | ALLUMINATION, a corp. of unknown |
| 20 | origin, PHIL AMATO aka |
| 21 | "THE CLUB", an individual, |
| 22 | ROBERT BRANER, an individual, |
| 23 | ROBERT LASKOWSKI, an |
| 24 | individual, MELISSA WELCH- BLUE, |
| 25 | an individual, |
| 26 | DONNA STEWART, an individual, |
| 27 | |
| 28 | 5 |

1  **WILLIAM TANNAZ, an individual,**

2  **HERB GOLDMAN, an individual,**

3  **CHARLES SNIPES, an individual.**

4  **NILS GREVILLIUS, an individual,**

5  **KRISHNA MAHADOO, an individual,**

6  **MISTI REYNOLDS, an individual,**

7  **SAN BERNARDINO COUNTY**

8  **SHERIFF DEPARTMENT, an entity**

9  **of unknown origin, RICK FLEMING,**

10  **an individual, CA DEPARTMENT**

11  **OF JUSTICE, RICH VERDUCCI, an**

12  **individual, et al, John Does 1 thru 50**

13

14  **DEFENDANTS**

15  _____

16

17  TO ALL PARTIES AND THEIR RESPECTED ATTORNEYS OF RECORD:

18  PLEASE TAKE NOTICE that the Plaintiff BJ Davis, an individual, complains of

19  Defendants, and each of them alleges and DEMANDS TRIAL BY JURY:

20

21  **NATURE OF THE ACTION**

22

23  1) The La Cosa Nostra Family of Salvatore "Bill" Bonanno, a former

24  Arizona resident before his recent death. The Bonanno crime family is the framing

25  foundation to this instant matter before the court as the cornerstone and first "overt

26  act", predicate of all RICO LAW requirements as prescribed in <u>18 U.S.C. § 1962</u>

27

(a), (b), (c), (d)(Added Pub. L. 91-452, title IX, § 901, Oct. 15, 1970, 84 Stat. 942, and amended Pub L. 100-690, title VII, § 7033, Nov. 18, 1988, 102 Stat. 4398) violations where the venue is proper as the events were birthed in Arizona and the primary parties reside in and do business in Arizona (Section § 1965); "CIVIL REMEDIES UNDER SECTION 1964" - "Any person injured in his business or property by reason of a violation of Section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including reasonable attorney fees......"

2) Racketeering Influenced Corruption Organization as best known to the statute is most easily understood in its intended context: the Mafia. In the context of the Mafa, the defendant person, Estate of Bonanno (i.e., the target of the RICO Act) is the deceased Godfather, Salvatore "Bill" Bonanno of the Bonanno crime family. The "racketeering activity" is the criminal activities in which the Mafia engages, e.g., extortion, bribery, money laundering, blackmail, loan sharking, pink sheet penny stock fraud, wire fraud, mail fraud, bank fraud, Internet fraud, blackmail, coercion, extortion, slander, defamation of character, physical assaults, death threats, etc. RICO was created for the mob or Mafia family which has engaged in these criminal actions for generations, the criminal actions constitute a pattern of racketeering activity. The government can criminally prosecute the Godfather and soldiers/"strawmen" under RICO and send him to jail even if the Godfather has never personally killed, extorted, bribed or engaged in any criminal behavior. The Godfather can be imprisoned because he operated and managed a criminal enterprise that engaged in such acts.

3) Moreover, under Section 1964(c) of the RICO Act, the victims of the Mafia family (i.e., the extorted businessman, the employers whose employees were

bribed, blackmailed, defrauded, extorted, coerced, assaulted, defamed, the family of the injured victim) can sue the Godfather civilly and recover the economic losses they sustained by reason of the Mafia family's and its confederates conspiring and engaging in patterns of racketeering. In this pleading civilian and federal employee's, organizations, a union have aided and abetted the Bonanno crime family under the color of law directly in the furtherance of the conspiracy and racketeering acts.

4) Plaintiff respectfully makes a demand for civil investigation by the United States Attorney General office per Section 1968 to preserve the custody and control of any and all documentary materials relevant to this racketeering litigation and all materials will be produced for examination. Plaintiff asks the court to authorize the issuance of subpoenas necessary in Pro Se to obtain the items. Plaintiff asks the court to waive and enforce the 100 mile limit in this filing as defendants will attempt to frustrate and avoid such compliance if not ordered by this court (Added Pub. L. 91-452, title IX § 901(a), Oct. 15, 1970, 84 Stat. 944) and Hobbs Act 1946..

5) Plaintiff asks the court to order defendants compliance with F.R.P. 26, 26 (a) and 11 now as a Pro Se litigant litigating the number of defendants. As prescribed by F.R.P. 26(a) "without waiting awaiting a discovery request, provide to" the plaintiff (1) "the name and..the address and telephone number of each individual likely to have discoverable information relevant to disputed facts" and (2) "a copy of...all documents, data compilations, and tangible things in possession, custody, or control 0f the party that are relevant to the disputed facts...". As mandated in F.R.P. 26 (a)(1) as indicted that savings in time and expense can be achieved..."

1    6) From a legal objective Plaintiff's case is directly linked to the Mafia

2  scenario described above, meeting every predicate of succeeding under the RICO

3  "overt" Act at the time of trial by jury with seven convictions in place involving

4  fifteen companies.  This instant matter is based on the Bonanno family and a

5  multi-complexed series of "strawmen" operating as agents and representatives of

6  the prohibited racketeering organizations to include but not limited to defendants

7  as "persons" with federal employees aiding and abetting prohibited racketeering

8  enterprises and individuals. Thereby shielding said parties from investigation and

9  prosecution to include but not limited to denying plaintiff due process while

10  intentionally obstructing justice, extortion under the color of law as RICO

11  predicates, "overt acts" and as prescribed by RICO violations 18 U.S. C. §§ 1961-

12  1968 (1988) & U.S.C.A. §§ 1961-1968 (1984 & Supp. 1990) and hobbs Act

13  1946.

14    7) The Enterprise(s), the Bonanno crime family  are created by the late

15  Salvatore "Bill" Bonanno, Estate of Bonanno, Mafia Capo, self-professed made-

16  man, mobster Michael Ralph Saquella aka Paloma, aka Blake, a Bonanno member

17  and Bonanno's nephew, made-man "Capo"Anthony Tarantola, who is awaiting

18  indictment for the same series of crimes involved plaintiff. Those since convicted

19  or are under investigation, to include but not limited to "strawmen" Michael

20  Gardiner, Kimberley Dawn Lebel aka Kates and others known and unknown

21  acting as agents and/or "strawmen" . Bonanno created enterprises with "an

22  ongoing 'structure' of persons associated through time, joined in purpose and

23  organized in a manner to hierarchial or consensual decision making" ) United

24  States v. Neapolitan, 791 F.2d 489, 500 (7th Cir. 1986). The central element is

25  structure, the enterprise is more than a group of people who get together to commit

26  a 'pattern of racketeering activity'. The Department of Justice Press release

27

28                                          9

clarifies and qualifies the RICO predicates and/or "overt acts".

8) Plaintiff would ask the court permission due to the death threats and physical attacks for media coverage allowed in the court to dissuade any further mafia attacks and to contain the unbridled arrogance of agents under the color of law from further violating the constitutional rights of plaintiff and due process of law. Plaintiff asks the court to intervene and to keep these issues public throughout the proceedings as as per Form 5, 3) discouraging wasteful pretrial activities <u>Seattle Times Co. V. Rhinehart.</u>

9) Godfather Salvatore "Bill" Bonanno would have been indicted with other members of the Mafia family in New York and New Jersey as the Bonanno family still heads the five families. Specifically the Estate of Salvatore "Bill " Bonanno and his widow Rosalie Boanno, the niece of Colombo organized crime family, Mafia Don, Joe Profaci. Relatedness and continuity establish the predicate "overt acts" acts; 1) the acts amounted to continued criminal activity, the acts extended for years; or 2) the predicate acts, pose a threat of continued activity as the history reflects. Plaintiff was coerced and extorted and his companies taken over when he was as the sole creator, sole officer, President and majority stock holder as prescribed by Nevada law. Defendants engaged in a variety of conspiracies <u>Schiffels v. Kemper Financial Services, Inc., 978 F.2d</u> at <u>346</u>, conspiracy; has standing to sue at <u>349</u>. Judge Flaum noted in <u>United States v. Neopolitan, 791 F.2d 489, 497 (7th Cir. 1986)</u>, "a conspiracy to violate RICO should not require anything beyond that required for a conspiracy to violate any other federal law".

10) Saquella, pled guilty to multiple federal charges on March 14, 2008, in

the Eastern Federal District Court of Virginia based on the formal complaints by Plaintiff BJ Davis and Julia Davis, who is a former federal Customs and Border Protection Officer Julia Davis to the FBI and SEC about the illegal activities of the Defendants. Saquella and his co-conspirators ("persons") Lawrence Kaplan, and Justin Medlin pleaded guilty and were convicted for conspiracy and mail fraud involving fifteen (15) companies, including Plaintiff's company Beverly Hills Film Studios. The statue of limitations begins at the date of the conviction on March 14, 2008, and the defendant shall estop from denying the essential allegations of the criminal offense in any subsequent civil proceedings Section §1964 Remedies, under Sedima, violations of subsection (c) of § 1962 RICO, to include (b) of § 1962 and 1961(3) further illuminates Saquella's guilty pleas of multiple RICO predicates. (Exhibit '1'- DOJ Press Release Saquella conviction, Exhibit '2' Saquella Waiver of Indictment).

11) Assistant US Attorney Patrick Stokes for the Eastern Federal District Court of Virginia communicated in writing that the DOJ is aware of Saquella's association with the Bonanno organized crime family. It was communicated the DOJ did not have the resources to fully and thoroughly investigate and prosecute all of the parties involved in this criminal endeavor. (Exhibit '3' - Stokes e-mail RE: Saquella/Bonanno association).

12) Plaintiff BJ Davis, an accredited film and television Hollywood producer/director, member of the Directors Guild of America and Producers Guild of America with his companies Beverly Hills Film Studios, Inc., Forget About It, Inc. and Dirty Love, Inc. were extorted by the Bonanno crime family and fell victim to the prohibited racketeering schemes of the perpetrators known herein as

1  defendants in a total of fifteen companies and other related RICO violations.

2  Plaintiff would not be part of a penny stock racketeering scheme with the Bonanno

3  group and that set the wheels into motion to get rid of the accredited film-make

4  maker and his four partners John D. Schofield, producer of Academy Award

5  winning films "ALI", "Jerry McGuire" and "As Good As It Gets" and producer,

6  Hoboken, New Jersey Detective commander, Captain Anthony Falco,

7  businesswoman, and Entrepreneur Eva Choina, Executive Producer Beau Davis

8  and screenwriter and producer Julia Davis to tally a total of 24,000 victims, nearly

9  $20 million dollars defrauded  as reflected in the DOJ PR, Exhibit '1'.

10

11      13) Third party beneficiaries, victims with point participants in economic

12  gross and net receipts to the company and film productions, to include but not

13  limited to Academy Award nominees Burt Reynolds, Raquel Welch, Robert

14  Loggia, Charles Durning, Richard Grieco, Phyllis Diller, John D. Schofield, Eva

15  Choina, Anthony Falco, Julia Davis, Beau Davis, Carmen LaBruno, Cary

16  Glieberman, Jenny Blackwood, Manual Flores and Plaintiff BJ Davis. The third

17  part beneficiaries relied on plaintiff as the sole creator, President, sole officer and

18  majority stockholder of Beverly Hills Film Studios, Inc. and, Forget About It, Inc.

19  to protect their potential income earnings to include but not limited to stock

20  holders.

21

22      14) Beverly Hills Film Studios, Inc., one of fifteen companies, has nearly

23  three thousand investors from BHFS, FAI, DLP, from a grand total of 24,000

24  victims with losses of over $20 million as a direct result of the RICO "Enterprises"

25  and "Persons" as part of the Bonanno organized crime family engaging in

26  prohibited racketeering. Continuity plus relationship is highlighted as explained in

27

28                                    12

*Sedima*, pattern of racketeering activity exists and fact-specific in <u>Jones v. Lapme,</u>
<u>845 F.2d 755, 757 (7th Cir. 1988)</u>. The factors 1) the number and variety of the
predicate "overt acts" and the years in which they were committed by recidivist
Saquella (1997) as a Bonanno agent, 2) 24,000 victims from 15 companies in this
one cluster of violations, 3) each company required its own unique and formulated
scheme to deceive the public, 4) $20 million dollars defrauded from the 24,000
victims and the amount of theft and damages to plaintiff in totality will be
determined at the time of trial by jury in the dollar amount.

15) Per Saquella's directive acting for Bonanno, the Defendants conspired
to execute multiple forgeries of Nevada Corporate registrations, financial, business
and supportive documents pertaining to Beverly Hills Film Studios, Forget About
It, Inc., Dirty Love Productions, Inc. were set into motion by "strawmen",
Kimberley Dawn Lebel aka Kates and Michael Manasseri, Michael Gardiner,
Melissa Welch-Blue, to include but not limited to known and unknown others. An
elaborate check kiting and forgery scheme was created, with the transferral of the
companies, bank records. Defendants conspired to commit bank fraud, wire fraud,
mail fraud, theft of mail, aided and abetted by rogue federal employees Herbert
Kaufer, James Wong and Jeffrey Deal while orchestrated to discredit Plaintiff and
to stop other city, county, state and federal agencies from investigating and
prosecuting the complaints of Plaintiff. (Exhibit '13' - Kaufer personal notes to
stop investigations).

15) Plaintiff sought relieve in CA Superior State Court lawsuit, Case no.
BG323455 that was filed on October 26, 2004, the first in a series of lawsuits by
Plaintiff against the parties. The Plaintiff was coerced and defrauded into signing a

13

settlement agreement drafted by co-defendant Michael Gardiner, former mafia attorney of Michael R. Saquella to settle the case quietly. Defendants lied and defrauded plaintiff to deceive him into signing a settlement leaving the company to the co-defendants to carry on with their stock manipulations).

16) In return, co-defendants, Lebel aka Kates and others would make full disclosures as to their conversations, activities and documents exchanged with co-defendants Kaufer, Wong, Deal and others known and unknown as it pertained to plaintiff and his wfie Julia Davis who is a former federal law enforcement officer whistleblower prevailing in EEOC actions against the DHS with Wong, Kaufer and Deal retaliating against Julia Davis and plaintiff as they were agency defendants in the Julia Davis case in which she prevailed.

17) The EEOC Judge Daniel Leach stated the agency had acted illegally against Julia Davis and in the proceeding Wong, Kaufer and Deal attempted to attack plaintiff with no cause or jurisdiction which is not a matter before this court. Plaintiff tenders <u>F.R.P. 9(b), Moore v. PaineWebber, Inc. 189 F.3d 165 (2d Cir. 1999)</u> to fully emphasis the deceit, lies and over acts utilized to strong-arm his company, his family and himself. Lebel on behalf of the Bonanno group committed perjury during sworn affidavits and depositions representing full compliance to the settlement pre-requisites of full disclosure for plaintiff to agree to release his total ownership and control of the company while retaining certain contractual rights with the return of all of his intellectual properties and film projects acquisitioned by the company Beverly Hills Film Studios, Inc. as assets.

18) Contrary to the perjured misrepresentations to deceive and defraud

14

1 plaintiff recent discovery in other legal proceedings reveals that Lebel aka Kates
2 conspired with co-defendants, Kaufer, Deal, Saquella and others known and
3 unknown; did exactly the opposite as opposed to sworn affidavits made under the
4 penalty of perjury. The Defendants continued to conspire with each other and to
5 facilitate prohibited racketeering fully endorsed and protected under the color of
6 law while aiding and abetting the extortion of plaintiff and his companies. (Exhibit
7 '21' - Kaufer notes of Kates retractions in violation of settlement agreements)
8
9     19) It was only a means to delay this inevitable RICO action. Every
10 settlement drafted was derived to defraud and to deceive plaintiff out of his
11 economic advantage. Coerced and extorted in violation of <u>Hobbs Act, Section</u>
12 <u>1964</u> (c) authorizes a private suit by "[a]ny person injured in his business or
13 property by reason of a violation of 1962." <u>Section 1962</u> in turn makes it unlawful
14 for "any person"-not just mobsters -to use money derived from a pattern of
15 racketeering activity to invest in an enterprise, to acquire control of an enterprise
16 through a pattern of racketeering activity, or to conduct an enterprise through a
17 pattern of racketeering activity. §§ 1962(a)-(c). *If the defendant engages in a*
18 *pattern of racketeering activity in a manner forbidden by these provisions, and the*
19 *racketeering injure the plaintiff in his business or property, the plaintiff has a*
20 *claim under §§1964 (c). Id.* at 3285 (emphasis added) . Saquella and Kates
21 continued to issue and trade forged stocks via Colonial Stock Trading Company.
22
23     20) The settlement agreements drafted by the Bonanno group were derived
24 by coercion, extortion, fraud and deceit and only recent discovered in the Central
25 Federal District Court of California, Davis v. USA Case No. ED-5:07-CV-00481-
26 SGL-OP was the fraud and deceit under RICO and extortion under the color of
27

1   law were made known separate and unrelated. As a result of the RICO violations
2   all agreements and/or actions taken, agreed to or ruled on by any court can be
3   vacated and the business concerns returned to the injured party, i.e., the plaintiff in
4   accordance with RICO provisions will seek injunctive relief.
5
6       21) Plaintiff also secured AZ Restraining orders on January 17, 2006,
7   against Salvatore "Bill" Bonanno, Michael Paloma aka Saquella, Anthony
8   Tarantola, Kimberley Dawn Lebel aka Kates, Michael Manasseri and Stephen
9   Eckleberry in CA Superior Court.
10
11      22) The Defendants conspired to attack plaintiff under the color of law
12  where Kaufer and Deal's own handwritten notes state that they will be protected
13  personally and they in turn, will protect the agents and representatives of the
14  various enterprises, Bonanno crime family. Specifically, Kaufer, Deal and Wong
15  with Kimberley Dawn Lebel aka Kates, Michael Saquella aka Paloma, Anthony
16  Tarantola, Jonathan Dimock, Noel Kendall, Robert Braner, Melissa Welch-Blue
17  and Michael Gardiner and others known and unknown, acting as an agents for the
18  Bonanno family, Estate of Bonanno, Rosalie Bonanno, Beverly Hills Film Studios,
19  Inc., Big Screen Entertainment, Inc., Forget About It, Inc., Dirty Love
20  Productions, Inc., Comanche Properties, More Than One Productions, Inc.,
21  Halfway To Tucson, Inc., Best Domain Web Hostings, Amazon.com, Internet
22  Movie Database, Screen Actors Guild, Screen Actors Guild Producers Health
23  Plan, Sedona Cinemas, Mallview Cinemas, Raging Bull, Allumination, San
24  Bernardino County Sheriff Department, Los Angeles Police Department, Federal
25  Bureau of Investigation, Internal Revenue Service. Kaufer and Deal discussed
26  engaging other law enforcement agencies to selectively and maliciously prosecute
27
28                                  16

plaintiff and his family members while revealing plaintiffs complaints to the FBI and SEC to co-defendants of the organized prohibited racketeering entities and individuals. Kaufer and Deal conspired with the San Bernardino County Sheriff Department to have plaintiff and Julia Davis arrested on false and contrived charges while knowing plaintiff was innocent and consequently facilitated by Kaufer and Deal to falsify accusations with state statutes that did not apply.

23) Consequently, the CA Superior Court dismissed the case by Ex Parte Motion and then ruled that the plaintiff and Julia Davis were factually innocent, sealed and destroyed the court record as a result of Kaufer and Deal's criminal and corrupt acts under the color of law and Hobb's Act violations 1946 (Exhibit '4'- CA Superior Court Ruling).

24) The Mafia as the force behind these RICO violations 18 U.S.C. § 1962 (a), (b), (d) comes full circle of the four (4) predicates "overt acts" with defendants as persons and enterprises as well associates in fact.

25 ) **"DEFENDANT PERSONS"** - "Person" within the meaning of 18 U.S.C. §§ 1961 (3) and 1964(c). As a result, the Estate of Bonanno, acting on behalf of the late Don Salvatore "Bill" Bonanno crime family as officers, agents and employees (including but not limited to the entities, enterprises named in the complaint) constitute an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961 (4) and 1962 (c) (the "Mafia Bonanno Family Enterprise(s)). In the alternative within the meaning of 18 U.S.C. §§ 19621 (4) and 1962 (c). Herein known as the Estate of the late SALVATORE "BILL" BONANNO. Plaintiff herein alleges deceased defendant mob boss Salvatore "Bill" Bonanno of the Bonanno Mafia crime family which is a RICO enterprise that perpetuates criminal patterns of long term crimes for criminal financial gain, in criminal penny stock

1   fraud, pump and dump scams, forgery, check kiting, bank fraud, wire fraud, mail

2   fraud, theft, extortion, coercion, blackmail, slander, defamation of character,

3   assault, death threats, copyright violations to include but not limited to the

4   participation and knowledge of Defendants ESTATE OF SALVATORE "BILL"

5   BONANNO, ROSALIE BONANNO, MICHAEL R. SAQUELLA aka PALOMA

6   aka BLAKE, KIMBERLY DAWN LEBEL aka KATES aka PATRICIA

7   BANDERA, aka MAPPIN, MICHAEL AARON GARDINER, HERBERT

8   KAUFER, JEFFREY J. DEAL, JAMES WONG, RICK FLEMING, NICHOLAS

9   BROWNING, III, DAVID FRANCIS ZAPPONE aka JOHNNY RAMBOVA,

10  FRANCIS T. ZAPPONE, JIM JACOBS, STEPHEN ECKLEBERRY, ROSSLYN

11  HORNSBY, MICHAEL MANASSERI, NOEL KENDALL, PHIL "THE CLUB"

12  AMATO, JONATHAN DIMOCK aka CHUCK BANKS, PHIL YOUNG,

13  ANTHONY TARANTOLA, DAVID STOCKER, LAWRENCE KAPLAN,

14  JUSTIN MEDLIN, STEVE BERG, BRION KOS, ROBERT BRANER, ROBERT

15  LASKOWSKI, MELISSA WELCH- BLUE, DONNA STEWARD, WILLIAM

16  TANNAZ, HERB GOLDMAN, CHARLES SNIPES, NILS GREVILLIOUS,

17  KRISHNA MAHADOO, MISTI REYNOLDS, GLORIA LUNA, BRIAN

18  DRISCOLL, NATE WILLIAMS, KEITH WILLIAMS, JOHN BAGNOLLI,

19  ANGIE ORTANEZ, ARNIE MEDRANO, RAY PITESKI, MIKE ESCOTT,

20  SHERRY MacALLISTER, JOHN QUINN, JOHN VINING, MARK HUNTER,

21  MIKE ESCOTT, SUSAN BOUTWELL, CAROLINE CLARK, MICHELLE

22  KENNEY and John Does 1 through 50. Hobbs Act and See National Organization

23  For Women v. Scheilder, 510 U.S. 249, 259 n.5 (1994), 18 U.S.C. § 1962 (c), 18

24  U.S.C. §§ 2, 1341 and 1343.

25

26      26) Plaintiff alleges the Defendants named herein, associated with their

27

28                                    18

1  enterprises have intentionally and habitually by reason of the defendants

2  participation and management of the enterprise and pattern of racketeering, the

3  Plaintiff is entitled to treple damages, attorney fees and costs under Section 1964

4  (c). (commonly referred to as RICO's civil liability provision). Section 1962 (a)

5  and (b) Plaintiff has sustained more than injury flowing from the racketeering

6  activity.

7

8      27) Section 1962 (a) Plaintiff contends and will prove at the time of trial

9  injuries by defendants investment of the proceeds of racketeering activities. Under

10  Section 1962 (b), Plaintiff was injured by Defendants coercion, defendant's

11  acquisition ("strong-arming" - Hobbs Act) or maintenance of an interest in or

12  control over an enterprise through a pattern of racketeering activity in the pink

13  sheet penny stock fraud schemes. Further illuminated by the convictions of seven

14  (7) individuals operating in RICO predicates by Bonanno Lieutenant, Co-

15  Defendant Saquella, pleading guilty on March 14, 2008 in the Eastern Federal

16  District Court of Virginia who waived his rights and indictment.

17

18      28) A clinical review of these multiple flagship penny stock scam

19  companies, prefaced foundationally with the multiple convictions with only a

20  partial conviction of the co-defendants, Plaintiff has demonstrated and established

21  meeting the RICO application even certain legal interpretations of the RICO Act.

22

23      29) Plaintiff respectfully reaffirms having met Section 1962 (c) standards;

24  1) Plaintiff will prove at time of trial the "Defendants/Persons" affiliated, 2) were

25  employed by or associated with the enterprises, 3) that they engaged in or affected

26  interstate commerce, 4) the Defendants/Persons" operated or managed the

27

28

enterprise(s), **5)** through a " recitative, long term pattern", **6)** racketeering in penny stock fraud since 1997**)** the Plaintiff was injured in his business and properties by reason of the "long term and intentional racketeering pattern for financial criminal gain as articulated in the Department of Justice press release in part; praising the waiver of indictment of Bonanno "Cash Cow" mob Lieutenant Michael Ralph Saquella.

30) **"ENTERPRISES"**: Herein known as the "Enterprises". Plaintiff alleges the following shell companies or corporations, agencies, unions, city, county, state and federal entities operated as enterprises operating in prohibited racketeering enterprises of penney stock scams and conspired to engage in a variety of overt illegal activities in support of prohibited racketeering enterprises under the directives of Salvatore "Bill" Bonanno with co-conspirators Anthony Tarantola, Michael Ralph Saquella and others known and unknown. United States v. Turkette, 452, U.S. 576, 580-81(1981). "Enterprises" within the meaning under Subsection (4) of § 1961, the term "includes any individual, partnership, corporation, association, or other legal entity, and any union or *group of individuals associated in fact* although not a legal entity."

31) United States v. Turkette describes a racketeering enterprise as "a group of persons associated together for common purpose of engaging in a course of conduct" and as an "ongoing organization, formal or informal {with} various associates functioning as a continuing unit". The Bonanno crime family is not structured as formal as a corporation or partnership, but the relationships with the structured entities are "associations in fact" or that a combination of individuals and corporations constitutes an enterprise. The Seventh Circuit has held that a sole

20

1 proprietorship could be an "enterprise" with which the proprietor can be

2 associated. Labor unions , government and public agencies have been

3 characterized as enterprises in the concept of RICO purposes. United States v.

4 Conn. 769 F.2d 420 (7th Cir. 1985). Defendants as co-conspirators with their

5 multiple failed and/or revoked companies operating in the commerce of prohibited

6 racketeering, money laundering, mail fraud, forgery, theft and Hobbs Act

7 violations frame plaintiffs filing.

8

9　32) As a result, the Estate of Bonanno, acting on behalf of the late mob Don

10 Salvatore "Bill" Bonanno crime family as officers, agents and employees

11 (including but not limited to the entities, enterprises named in the complaint)

12 constitute an association-in-fact "Enterprise" within the meaning of 18 U.S.C. §§

13 1961 (4) and 1962 (c) (the "Mafia Bonanno Family Enterprise(s)). In the

14 alternative within the meaning of 18 U.S.C. §§ 1962 (4) and 1962 (c), United

15 States v. Castellano, 610 F.Supp. 1359, (S.D.N.Y. 1985).

16

17　33) These acts with convictions advances the standing of the filings. The

18 officers and parties operated "under the appearances" of legitimate corporate

19 parents and their subsidiaries engaged in criminal penny stock fraud, pump and

20 dump scams, fraud, deceit, check kiting, bank fraud, mail fraud, mail theft, wire

21 fraud, forgery, extortion, Hobb's Act violations, theft, coercion, blackmail,

22 slander, defamation of character, material misrepresentations to defraud the public

23 and to do irreparable financial and professional harm to the Plaintiff by the

24 ESTATE OF SALVATORE "BILL" BONANNO, the late Salvatore "Bill"

25 BONANNO, BIG SCREEN ENTERTAINMENT GROUP, PARACORP [

26 Seventy (70) companies ] INCORPORATED, AMAZON.COM, INTERNET

27

28

1  MOVIE DATABASE.COM, MORE THAN ONE PRODUCTIONS, PINE

2  CANYON RECORDINGS, BEST DOMAIN AND WEB HOSTINGS, INC.,

3  COMANCHE PROPERTIES, HALFWAY TO TUCSON PRODUCTIONS,

4  HARKINS THEATERS, dba SEDONA CINEMAS, LLC., ALLUMINATION,

5  FIRST AMERICAN STOCK TRANSFER, COLONIAL STOCK TRANSFER

6  COMPANY, BELLACOSSA FILMS, INC., LOS ANGELES POLICE

7  DEPARTMENT, WELLS FARGO BANK, MALLVIEW CINEMA, SAN

8  BERNARDINO COUNTY SHERIFF DEPARTMENT, CA DEPARTMENT OF

9  JUSTICE, FEDERAL BUREAU OF INVESTIGATION, INTERNAL REVENUE

10  SERVICE.  Plaintiff alleges the parties solicited the "association-in-fact" of some

11  parties while operating the enterprises for the Bonanno crime family and deriving

12  income and influence for the parent entity/Godfather. 18 U.S.C. § 1961 (4).

13

14        34) Formal or informal the assembly of parties and/or enterprises surpass

15  the pre-requisite three (3) characteristics; **1)** continuity of structure and personnel,

16  **2)** a common shared purpose to drive the stock prices in penny stock scams, to

17  deceive and entice the public; **3)** a clearly defined structure that is inherent in the

18  pattern of racketeering to achieve goals and objectives legally and/or illegally. Co-

19  defendants guilty pleas define the RICO overt acts.  Diamonds Plus v. Kolber, 960

20  F. 2d 765,769 (8th Cir.1992). At the time of trial Plaintiff will articulate activity

21  distinction in the stock fraud, *"pump and dump"* which is memorialized in United

22  States v. Michael R. Saquella from the Eastern Federal District Court of Virginia,

23  the Honorable Judge Leonie M. Brinkema presiding, Case No.1:07CR305-001 and

24  Saquella's guilty pleas (Title 18, United States Code Section 371) to commit

25  securities fraud and in violation of (Title 15, U.S.C. sections 78j(b) and 78ff and

26  17 C.F.R. Section 240.10-b(5)) and (2) conspiracy to commit mail fraud, Title 18

27

28                                    22

U.S.C. section 1037(a)(3) and (b)(1)(A).

35) Saquella waived indictment and entered pleas after plaintiffs formal complaints to the Securities Exchange Commission and Federal Bureau of Investigation in Phoenix, AZ and Los Angeles, CA, both being the origin of the investigations and subsequent court findings when plaintiff was made an FBI Confidential Informant.

36) Co-Defendants DAVID STOCKER, LAWRENCE KAPLAN and JUSTIN MEDLIN have been convicted or pled guilty while Defendant ANTHONY TARANTOLA, Bonanno's nephew awaits a federal indictment as a cornerstone and Bonanno family representative with companies/enterprises such as Comanche Properties, Halfway To Tucson Productions, Red Rock Entertainment, Pine Canyon Recordings, Pine Canyon Studios, NevCal, Big Screen Entertainment Group, Paracorp Inc., AT Emerald, Inc., Broadleaf Investments, Franklin-Blue Consulting, Big Screen Entertainment Group, Inc., Forget About It, Inc., Dirty Love Productions, Inc., and Latin Heat all which are tied to the co-defendants as referenced in the Department of Justice Press release related to the multiple conspired and organized schemes of person(s), convicted felons, the co-defendants, enterprises and subsequent convictions. The names herein total nine convictions because of plaintiffs reports to the FBI and SEC and others forthcoming.

*The Ninth Circuit stated:*

[T]}he Supreme Court's statement in *Turkette* that an enterprise

1  is an entity separate and apart from the pattern of activity in which it engages is
2  not a statement that an associated-in-fact enterprise must have some kind of
3  separate structure. 452 U.S. 583, 101 S.Ct. 2524. Rather, it is merely a statement
4  of the obvious: The enterprise and its activity are two separate things. One is the
5  enterprise. The other is the activity.

7     *Id.* At 551. The Ninth Circuit concluded that a viable association-in-fact
8  enterprise must simply possess their characteristics: "the group must have a
9  common purpose", the group must function as an ongoing organization, formal or
10  informal," and the various associates must function as a "continuing unit." *Id.* At
11  552 (citing Turkette, 452 U.S. at 583, 101 S.Ct. 2524).

13     37) **"Enterprise Engaged in Affecting Interstate Commerce"** - When a
14  RICO claim is based upon a violation of federal criminal statues (see 18 U.S.C.
15  1961 (1)(B)), the nexus with interstate commerce is necessarily established by the
16  commission of the underlying federal crime. See United States v. Urban, 404 F.3d
17  754, 767 (3d Cir. 2005)(stating that "the government /plaintiff'need only prove
18  that Hobbs Act extortion "potentially affected interstate commerce"). Moreover,
19  because the U.S. Constitution confers the postal powers upon the federal
20  government, acts of mail fraud, theft of mail, even interstate use of the mails, have
21  an inherent nexus with interstate commerce. United States v. Elliot, 89 F.3d 1360
22  (8th Cir. 1996). Saquella and co-defendants pled guilty to the acts and conspiracy
23  while other co-defendants overtly engaged in the ongoing conspiracies of
24  racketeering while perpetuating other felonies under the RICO and Hobbs Act.

26     38) RICO §1962 (a), Mail fraud, U.S.C. 18 §1341 and theft of United States

mail was perpetrated repeatedly by Kimberley Lebel aka Kates in association with Bonanno, Saquella, Tarantola, Welch-Blue, Gardiner and others stole plaintiffs mail, filed a fraudulent and forged change of address, stole the mail as delivered to a false address and then copied and distributed the mail to the co-defendants as recounted in the handwritten notes of Herbert Kaufer and Jeffrey Deal with the endorsement of James Wong. Lebel aka Kates, Saquella, Bonanno, Tarantola, Gardiner, Welch-Blue, Braner, Laskowski, Kaufer, Deal, Wong and others known and unknown did make material and false misrepresentations in the furtherance of commerce and criminal activities to government agencies (co-defendants), press releases, Business Wire, Securitron Magnallock Corp. V. Schnabolk 65 F.3d 256 (2d Cir. 1995) (Exhibit '20' - Kaufer notes per Lebel aka Kates confessions of mail theft, fraud and forgery ).

39) Violations of the mail fraud statue are almost always alleged in RICO complaints, a nexus with interstate commerce is almost always present. Mail fraud and theft was utilized extensively in the continuity and parties under the organized crime activities of Bonanno, Saquella, Gardiner, Kates and Tarantola while protected by co-defendants, rogue ICE employees Herbert Kaufer, James Wong and Jeffrey Deal as documented with tangible irrefutable evidence to include but not limited to Salvatore "Bill" Bonanno, all of whom are on surveillance audio tape, video and/or pictures threatening the life of Plaintiff to surrender his company and proceeds meeting every aspect of the Hobbs Act in association with RICO violations as prescribed in these statues, 18 U.S.C. § 1962 (a), (b), (c), (d)., formulating RICO's "Golden Triangle".

40) Evidence of handwritten notes of Immigration and Customs

25

Enforcement Agents Herbert Kaufer, James Wong and Jeffrey Deal articulate the
bank fraud, mail fraud, theft of mail, wire fraud, Internet fraud, theft, forgery and
fraud endorsed by Kaufer and Deal "under the color of law" while revealing the
identities of plaintiff and Julia Davis to the Bonanno family in violation of the
Identities Protective Act 1982, a federal felony as provided by the Phoenix, AZ
office of the Federal Bureau of Investigation egregiously. During discovery
Plaintiff will ascertain the number of violations and will amend the complaint.
Discovery shows trhat Kaufer and eal utilized the Patriot Act and wasted
government resources to aid and abet these racketeering enterprises. At the time of
trial by jury plaintiff will establish an improper relationship with Herbert Kaufer
and Kimberley Dawn Lebel aka Kates (Exhibit '5'- Kates Affidavit Plaintiff "CI").

41) Under the color of law while being aware of plaintiff protected
disclosures, whistleblowing and formal complaints to the Federal Bureau of
Investigation, Securities Exchange Commission, Los Angeles Police Department,
Los Angeles County District Attorneys office, San Bernardino County Sheriff
Department, Wells Fargo Bank, Kaufer and Deal with Wong conspired and
exerted all of their influence to protect the racketeering conspiracy and activities
of the Bonanno crime family from being investigated and prosecuted. Wong
exceeded the scope and authority of his office to make false and perjured requests
to the Arizona Attorney General Terry Goddard to prosecute plaintiff while
knowing the Bonanno crime family was being protected by his agents Kaufer and
Deal. Wong in a letter to Arizona Attorney General Goddard states, "his office
does not have jurisdiction". A) Wong recites an FBI number for Plaintiff and
during the course of discovery plaintiff will ascertain if that FBI number is
Plaintiff's code number as a Confidential Informant "CI" unlawfully released by

1  the FBI to Kaufer, Wong and Deal. B) Wong, Kaufer and Deal conducted

2  warrantless searches, warrantless surveillance, refused to comply with a CA

3  Superior Court order to return items taken by all of the defendants of property

4  belonging to plaintiff and family members. C) The defendants executed "sneak

5  and peak:" searches; D) abused the "Patriot Act" to advise the co-defendants from

6  the Bonanno family the whereabouts of plaintiff for Mafia elements to stalk and

7  attack plaintiff. E) Attorney Peter Szabadi's letter of plaintiff's standing in

8  company (Exhibit '6' - Attorney Peter Szabadi affidavit).

9

10  42) Wong knew plaintiff was not a party to any crimes regarding plaintiffs

11  own company while contacting a "strawman" and forger of the Bonanno clan, a

12  figure Nevada police know very well, Melissa Welch-Blue, a noted gang member.

13  Wong, Kaufer and Deal made material misrepresentations to Attorney General

14  Goddard who declined their unlawful and non-jurisdictional solicitations. Herbert

15  Kaufer sends Kates, the subject of formal forgery and check kiting complaints, an

16  adult film actress plaintiffs signatures samples from various government agencies

17  while stopping Kates from being investigated for forging on Kaufer's official

18  government letterhead. Kaufer and Deal conspire to launch the Internal Revenue

19  Service against plaintiff and his family members.

20  Exhibit '7' - Wong Letter to AZ AG, Exhibit '8' - Wong letter to a Bonanno

21  "strawman". Exhibit '9' - Kaufer Fax to Kates ).

22

23  43) **"Defendant's Operation or Management of Enterprise"** The

24  liability of RICO violation is NOT limited to "upper management" per the

25  Supreme Court. Defendant(s) must operate and manage the enterprise as they have

26  historically . Reeves v. Ernst & Young, 507 U.S. 170, 183 (1993). An enterprise

27

28                                    27

is "operated" not just by upper management but also by lower rung participants in the enterprises who are under the direction of upper management and in this case, the Mafia Mob Boss Salvatore 'Bill" Bonanno. An enterprise also might be operated or managed by others associated with the enterprise who exert control over it as, for example, by bribery. Bonanno reigned as the Godfather while his soldiers/"strawmen" acted on his behalf buffered and protected by all forms and jurisdictions of law enforcement headed by Herbert Kaufer and Jeffrey Deal with their supervisor James Wong, three federal employees heralded as being America's front line of defense against terrorism. These three individuals in association with the Salvatore "Bill" Bonanno crime family represent a form of tyranny and financial terrorism that should be purged from American society and federal employment at the taxpayer's expense. A paramount civil and financial ruling on behalf of plaintiff where the constitution is violated and citizens deceived by the thousands by criminal elements from both sides of the badge to advance the extortion of Americans everywhere is proper.

44)**"The Pattern"**

a) Relatedness - Penny Stock Fraud Schemes ring true with the same pattern of similar purposes ("pump and dumps") , results (estimated $20 million in losses and earned income from prohibited racketeering enterprises), the participants (Bonanno crime family and lieutenant Michael Ralph Saquella, Anthony Tarantola and Kimberley Dawn Lebel aka Kates), victims (in this case there are 24,000), or methods of commission or otherwise interrelated by distinguishing characteristics. United States v. Daidone, 471 F.3d 371, 376 (2d Cir. 2006). This represents only one block of fifteen companies. Plaintiff will

28

show at trial where the parties made a reported $45 million in days via other RICO enterprises. This is foundational in the Department of Justice's own Press Release related to the convictions of the defendants.

b) <u>Continuity</u> - The guilty pleas of Bonanno Lieutenant Michael R. Saquella on March 14, 2008 constitutes nearly ten (10) years of prohibited racketeering enterprises. Beverly Hills Film Studios, Inc., Forget About It, Inc., Dirty Love Productions, Inc. were birthed by Saquella and Phil Young of First American Stock Transfer from a shell company "Blue Shadows" and Cornerstone, Inc. in 1997. Some courts have held "a substantial period of time" may be as little as a year. See <u>Religious Technology Ctr. V. Wollersheim, 971 F .2d 364, 366 (9th Cir. 1992).</u> Bonnano, Saquella and Tarantola are not new to this endeavor with Comanche Properties, Halfway To Tucson Productions, More Than One Productions, Inc. Big Screen Entertainment Group, Best Domain Website Hostings, Pine Canyon Recordings, AT Emerald, Inc. Saquella was sanctioned in early 2000 as a recidivist violators represented by co-defendant Michael A. Gardiner in other related legal matters. Long term and continuity are clearly defined as RICO predicates "OVERT ACTS" <u>18 U.S.C. § 1961(5)</u>. Bonanno's nephew awaits indictment and Salvatore "Bill" Bonanno would have been prosecuted had he not died.

c) <u>Multiple Schemes and Pattern</u> - March 14, 2008, the guilty pleas of Michael Ralph Saquella having pillaged fifteen (15) companies, a BJ Davis company Beverly Hills Film Studios, Inc., Forget About It, Inc., Dirty Love Productions, Inc. being one of those with 24,000 victims and nearly $20 million dollars as validated in the Eastern Federal District Court of Virginia, Case No

1:07CR305, the Honorable Leonie Brinkema as reported by plaintiff. Checking, forgery, theft of mail, bank fraud, wire fraud, mail, mail theft, fraud, deceit, "pump and dump" penny stock scams and schemes. Sanctioned, protected, endorsed and conspired with James Wong, Herbert Kaufer and Jeffrey J. Deal as members of the enterprises were not prosecuted and justice obstructed, while attempting to have plaintiff and his family prosecuted, to include but not limited to the Los Angeles Police Department, San Bernardino County Sheriff Department, Internal Revenue Service, Federal Bureau of Investigation and other known and unknown. Multiple organizations were created and as a direct and proximate cause of Defendant's acts of mail fraud, theft and wire fraud, and it's violation of 18 U.S.C. § 1962 (c), Plaintiff has been injured in his business, profession, bonding, banking and properties within the meaning of 18 U.S.C. § 1964 (c), in that Plaintiff suffered consequential damages from unauthorized trading that would not have occurred to conduct if defendants had not first covertly acted and then strong-armed plaintiff (Exhibit '15' - Kates notes re: IRS - Angie Ortanez, Exhibit '16' - Kaufer response).

45) In furtherance of the RICO enterprise attorneys, co-defendants Michael A. Gardiner and Nicholas Browning acting as agents for Saquella, Bonanno, Kates, Kaufer and Deal with others did engage in racketeering acts utilizing federal courts to obstruct justice and as a weapon to commit acts of theft without a gun. At the time of trial this will be articulated and clearly received as fact, by means of fraud, deceit, forgery while aided and abetted by federal law enforcement defendants, a union, the Screen Actors Guild, Los Angeles Police Department, San Bernardino County Sheriff Department, FBI, SEC, IRS and Harkins Theaters, Sedona Cinemas, LLC., plaintiff was extorted, where his economic well being was

interfered with and civil rights violated under the color of law. Sec. §3.17, Handeem v. Lemaire, 112 F.3d 1339, 1348 (8th Cir. 1997). Gardiner and Browning in violation of Sec. §3.18 conspired with their co-defendants and exhausted all of their resources to execute the perfect crime of stealing a motion picture and film company under the directions of Salvatore "Bill" Bonanno lieutenants.

46) Gardiner himself being affiliated. Defendants have evaded accountability by 'harassment by litigation' shattering Rule 11 of F.R.P. An primary line of defense will be DiSilvestro v. United States, 767 F.2d 30, 32 (2d Cir. 1985) - accusations of plaintiff acting in bad faith and a vexatious litigant has been a means to distract from the facts which being has been endorsed under the color of law previously. Mr. Gardiner is now one of many co-defendants and his perjured acts and material misrepresentations are showcased that smacks of rank disrespect for the court.   Title 18, United States Code Section 371) to commit securities fraud and in violation of (Title 15, U.S.C. sections 78j(b) and 78ff and 17 C.F.R. Section 240.10-b(5)) and (2) conspiracy to commit mail fraud, Title 18 U.S.C. section 1037(a)(3) and (b)(1)(A)

47) **"Racketeering Activity"**

a) Section 1961 (1) of the RICO lists to the predicate acts. Plaintiff's filing meet the standard and letter of the law. Sedema, S.P.R.L. v. Imrex Co., 473 U.S. 479, 500 (1985). Repeatedly, defendants have made material misrepresentations to deceive and entice the general public to invest in bogus shell and or "pump and dump" companies utilizing the Internet, media and maintained by Jonathan Dimock aka Chuck Banks and his Best Domain Web Hosting located

in Scottsdale, AZ. <u>Securities Act of 1933 -</u> Defendants made material misrepresentations and fraudulent claims in press releases enlisting the support of Business Wire, Amazon.com, Internet Movie Database and others who were legally advised of the criminal activities and elected to proceed incurring more losses to the general public and irreparable damage to plaintiff and his good standing as the only legitimate and accredited film maker in this lot of "Soprano" type rejects.

48) Herbert Kaufer and Jeffrey Deal's handwritten notes describe their knowledge and participation in this prohibited racketeering enterprises and individuals under the color of law and continued to conspire to execute a series of patterns of racketeering acts connected by a common scheme, plan and act. The finding of factual innocence by a California Superior Court after Kaufer and Deal conspired with the San Bernardino County Sheriff Department arrest plaintiff and Julia Davis on charges that defy the intellect. <u>H.J. Inc. V. Northwestern Bell Telephone Co., 109 S. Ct. 2893, 106 L. Ed. 2d 1951 (1989).Title 18, United States Code Section 371)</u> to commit securities fraud and in violation of <u>(Title 15, U.S.C. sections 78j(b) and 78ff and 17 C.F.R. Section 240.10-b(5)) and (2)</u> conspiracy to commit mail fraud, <u>Title 18 U.S.C. section 1037(a)(3) and (b)(1)(A)</u>

49) The San Bernardino County Sheriff Department conspired with Kaufer, Wong, and Deal to arrest plaintiff and Julia Davis on contrived and false charges on February 19, 2006. As a result of those charges the case was dismissed and plaintiff and Julia Davis found factually innocent, the record ordered sealed and destroyed with all items taken in two warrantless searches to be returned. Kaufer and Deal were assisted by San Bernardino County Assistant District

1  Attorney Rick Young in the false charges to impact plaintiff financially so he
2  could not legally and financially protect his film, television production companies,
3  professional business and multiple intellectual properties, literary books, films, tv,
4  music and merchandising under seige by the Bonanno crime family attacked with
5  violence and overt acts from both sides of the badge under the color of law.
6  Plaintiff reserves the right to amend this RICO to include civil rights violations as
7  discovery reveals more outrageous and illegal activities of the growing number of
8  defendants (Exhibit '4' - CA Superior Court Ruling of Factual Innocence").
9

10      50) The CA Department of Justice - Firearms Division conspired with
11  Kaufer, Wong, and Deal to arrest plaintiff and Julia Davis on contrived and false
12  charges on February 19, 2006. As a result of those charges the case was dismissed
13  and plaintiff and Julia Davis found factually innocent, the record ordered sealed
14  and destroyed with all items taken in two warrantless searches to be returned.
15  Kaufer and Deal were assisted by CA DOJ employee Rick Fleming in the false
16  charges to impact plaintiff financially so he could not legally and financially
17  protect his film, television production companies, professional business and
18  multiple intellectual properties, literary books, films, tv, music and merchandising
19  under seige by the Bonanno crime family attacked with violence and overt acts
20  from both sides of the badge under the color of law. Plaintiff reserves the right to
21  amend this RICO to include civil rights violations as discovery reveals more
22  outrageous and illegal activities of the growing number of defendants (Exhibit '4'
23  - CA Superior Court Ruling of Factual Innocence").
24

25      51) Kaufer, Wong, and Deal conspired with Rick Fleming of the Ca
26  Department of Justice - firearms Division to arrest plaintiff and Julia Davis on
27
28                                    33

contrived and false charges on February 19, 2006. As a result of those charges the case was dismissed and plaintiff and Julia Davis found factually innocent, the record ordered sealed and destroyed with all items taken in two warrantless searches to be returned. Kaufer and Deal were assisted by San Bernardino County Assistant District Attorney Rick Young in the false charges to impact plaintiff financially so he could not legally and financially protect his film, television production companies, professional business and multiple intellectual properties, literary books, films, tv, music and merchandising under seige by the Bonanno crime family attacked with violence and overt acts from both sides of the badge under the color of law. Plaintiff reserves the right to amend this RICO to include civil rights violations as discovery reveals more outrageous and illegal activities of the growing number of defendants (Exhibit '4' - CA Superior Court Ruling of Factual Innocence").

52) Rick Verducci of the Alcohol & Tobacco Firearms conspired with Kaufer, Wong, and Deal to arrest plaintiff and Julia Davis on contrived and false charges on February 19, 2006. Verducci made material misrepresentations to individuals via the Internet, NCIC and TECS with fraudulent and perjured representations As a result of those charges the case was dismissed and plaintiff and Julia Davis found factually innocent, the record ordered sealed and destroyed with all items taken in two warrantless searches to be returned. Verducci slandered and defamed plaintiff making false records and statement of facts and events. Kaufer and Deal were assisted by Verducci to make false charges and permanent records to impact plaintiff financially so he could not legally and financially protect his film, television production companies, professional business and multiple intellectual properties, literary books, films, tv, music and merchandising

1 under seige by the Bonanno crime family attacked with violence and overt acts

2 from both sides of the badge under the color of law. Verducci represented that

3 plaintiff was arrested with a shotgun in his possession in Santa Monica, CA

4 Plaintiff reserves the right to amend this RICO to include civil rights violations as

5 discovery reveals more outrageous and illegal activities of the growing number of

6 defendants (Exhibit '4' - CA Superior Court Ruling of Factual Innocence").

7

8      53) Amazon.com and Internet Movie Database.com despite legal notices

9 have continued to post items submitted by Michael R. Saquella, Jonathan Dimock,

10 Michael Gardiner, David Zappone, Kimberley Dawn Lebel aka Kates, Caroline J.

11 Clark, Michelle Kenney and others, known and unknown, with false and

12 misrepresentations to remain published on their websites that have greatly

13 damaged the reputations of the plaintiff and his associates while destroying the

14 income earning ability of the film properties. The commentary prompted

15 cancellation with NetFlex and loss of sales making material misrepresentations

16 that the 2006 New Jersey Film Festival winner was a poorly made film and

17 panned. Fraudulent critics a la Chuck Banks who is actually Jonathan Dimcock

18 created by the mafia to impact the stock and to slander and defame plaintiff was

19 the double edged sword. Comparable to Saquella's fake film critic presented by

20 Jonathan Dimock aka Chuck Banks. Michael A. Gardiner conspired and executed

21 the same type of slander and defamation of material misrepresentation from the

22 San Diego, CA law firm of Reidl, McCloskey and Waring before his termination

23 for unlawful use of the computers and Internet stalking of plaintiff.Title 18, United

24 States Code Section 371) to commit securities fraud and in violation of (Title 15,

25 U.S.C. sections 78j(b) and 78ff and 17 C.F.R. Section 240.10-b(5)) and (2)

26 conspiracy to commit mail fraud, Title 18 U.S.C. section 1037(a)(3) and (b)(1)(A)

27

28                                    35

a) <u>Mail and Wire Fraud</u> - Mail fraud, wire fraud, theft and bank fraud are instruments in which the Bonanno gang robbed plaintiff and the public. <u>See 18 U.S.C. §§ 1341, 1343.</u> Plaintiff presents the Saquella guilty pleas to three (3) counts of fraud while the court was generous and left the bulk of this cancerous entity to continue this criminal legacy under the Bonanno mantel. Kimberly Dawn Lebel aka Kates and Melissa Welch-Blue forged corporate and financial instruments to unlawfully take control of the company and bank accounts. Plaintiff has the handwritten notes of federal agents James Wong, Herbert Kaufer and Jeffrey Deal as to the bank fraud, mail fraud, mail theft and Wells Fargo camera captured perpetrators taking money from a stolen ATM card. Totaling nearly $50,000 dollars in cash. Reasonable Reliance for Plaintiffs has been met and surpassed as will be established before a jury. <u>Summit Properties, Inc. V. Hoechst Celanese Corp. 214 F. 3d 556 (2000).</u> Purposeful misrepresentations, omissions, false statements, fraud, deceit and intentional witholding of settlement pre-requisites to coerce, extort and entice Plaintiff were used in violations of <u>Hobbs Acts</u> by Saquella, Tarantola, Eckleberry, Hornsby, Manasseri, Zumbrennum, Raging Bull and Investors Hub. <u>Bank of China v. NBM LLC, 359 F.3d 171,178 (2d Cir. 2004)</u> .

54) Herbert Kaufer and Jeffrey Deal's handwritten notes describe their knowledge and participation in this prohibited racketeering enterprises and individuals under the color of law. <u>18 U.S.C. §§ 1341, 1343.</u> The individual acts are harmful in stand alone statues. However, in carrying out the design of the conspirators which constitutes the cause of action and thereby legal damage to Plaintiff, the injured person has a right to action (*Emphasis added*). RICO in civil

actions demonstrates relief for a person "injured..by reason of: a conspir[acy], " it meant to adopt these well-established common-law conspiracy principles. See Black's Law Dictionary 383 (4th ed. 1968).

b) <u>Bank Fraud</u> - Check Kiting $1.2 million dollars and forgery of Plaintiff's names to financial and legal instruments. In part, <u>18 U.S.C. § 1344</u> (*Emphasis added*) <u>Under Section 1344(2),</u> bank fraud potentially arises even if the victim is not a bank and even if the bank did not lose any of its own property pursuant to a scheme to defraud. Bank fraud arguably occurs whenever a scheme to defraud enables the perpetrator to obtain any funds "under the custody or control of" of the bank. Additional and recent information connects Wells Fargo, Gloria Luna and Brian Driscoll, Wells Fargo employees with the RICO act and extortion under the color of law by Kaufer and Deal (See Kaufer notes , "puts Wells Fargo investigation to bed").

55) Thus, if a scheme to defraud results in elderly victims mailing checks to the perpetrator who has then cashed them, the proceeds pocketed by the perpetrator, the perpetrator has arguably engaged the bank in fraud. Kates, Manasseri, Bellacosa Films, Inc., Saquella, Tarantola, Dimock, Pine Canyon Recordings and Welch-Blue, Robert Braner in association with Bonanno forged corporate and banking documents to remove Plaintiff from his sole Nevada standing with forged filings, to include but not limited to Wells Fargo corporate bank accounts, the Nevada Secretary of State where the names were forged to change the name of Beverly Hills Film Studios, Inc. to Big Screen Entertainment. Defendants unlawfully changed the name of the company by forgery and fraud but their status and false claims are exposed by the dates of the documents as to when

they were done with the appearances of legality. To include but not limited to Forget About It, Inc. and Dirty Love Productions, Inc., Murder On The Hudson and others. Wong, Kaufer and Deal conspired with and assisted in this extortion and extortion under the color of law in violation of RICO and Hobbs Act.

56) Wells Fargo employees Gloria Luna failed to perform her duties and due diligence, acting unlawfully in accessing and dispensing plaintiffs banking information providing legal opinions and obstructed justice with Wells Fargo representative Brian Driscoll to the detriment of plaintiff. Luna and Driscoll acting as agents for Wells Fargo to escape financial liability for Kates forgery conspired with Kaufer and Deal to stop the investigation Plaintiff requested. Luna illegally accessed plaintiff's wife, Julia Davis' checking account and provided the information without a warrant to Kaufer and Deal. Wells Fargo assisted in stopping an investigation they were conducting based on the Plaintiff's CA Superior Court lawsuit "first filed". Kaufer and Deal conspire with Luna representing Wells Fargo offering an unfounded legal opinion while engaging in felony violations (Exhibit '14 ' - Kaufer notes to stop WF investigation).

57) Kaufer and Deal who were acting as direct agents of this racketeering enterprise under the color of law that stopped active investigations by Wells Fargo, The FBI, LAPD and SEC aiding and abetting a RICO conspiracy and a pattern of racketeering in the exploitation of Beverly Hills Film Studios, one of fifteen companies ravaged per DOJ reports and convictions (*Emphasis added*) . Herbert Kaufer and Jeffrey Deal's handwritten notes describe their knowledge and participation in this prohibited racketeering enterprises, aiding and abetting individuals under the color of law.

c) <u>Extortion - U.S.C. § 1951</u> (Emphasis added)  The audio taped words of Salvatore "Bill" Bonanno, with "death threats", to include threats of blackmail, extortion and physical attacks by mobster nephew "Capo" Anthony Tarantola, "Strawman" Michael Manasseri, threatening e-mails from Phil Amato, Kimberley Dawn Lebel aka Kates, Phil Amato, Jim Jacobs and others. Physical attacks by David Zappone and Phil Amato, stalking by Stephen Eckelberry wherein Plaintiff obtaining restraining orders against all of the Bonanno family defendants.

58) AUS Attorney Patrick Stokes recounts his knowledge of Saquella's ties to the Bonanno family resulting in convictions in the Eastern Federal District Court of Virginia where Saquella's tough talk is referenced by AUS Attorney Stokes and memorialized in the Department of Justices own Press release of the March 14, 2008 sentencing of Michael Ralph Saquella.  Herbert Kaufer and Jeffrey Deal's handwritten notes describe their conspiracy, knowledge and participation in this prohibited racketeering enterprises and individuals under the color of law while allowing theft of US mail and the unlawful copying and distribution of the stolen mail by Kimberley Dawn Lebel aka Kates and others known and unknown in the furtherance of RICO enterprise(s).

### i. Obtaining Property From Another and Threats of Physical Violence

As set forth, <u>the Hobbs Act defines</u> "extortion" as the "obtaining property from another, with this consent, induced by wrongful use of actual or threatened force, violence, or fear, under color of official right" (*Emphasis added*).  It  should be noted that

39

Wong, Kaufer and Deal with the FBI, LAPD, San Bernardino County
Sheriff Department and others in violation of the FEDERAL
IDENTITIES PROTECTION ACT OF 1982 jeopardized plaintiff's
safety, life, family and well being by making plaintiff "CI" status
public and known to the Bonanno crime family.

59) Whoever in anyway or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years or both. Defendants are in violaiton of a court order to return all items taken during a warantless search engaged in by Kates, Mansseri, Kaufer, Deal and others that include but not limited to intellectual properties, the original and produced television series "Medal Of Honor" hosted by Academy Award nominee Burt Reynolds, "Charlie Sheen's Stunts Spectacular" and "How To Become a Hollywood Stuntman" hosted by Charlie Sheen, to include plaintiffs' book, "Confessions Of A Hollywood Stuntman", numerous other projects in various stages of development worth millions of dollars.

ii. Issue of Consent

*"Civil Plaintiffs cannot press a RICO claim based on attempts
at extortion that did not succeed in harming them."* Sanchez, 492 F
.3d at 14. The mere fact that plaintiff had consented to part with
property in response to threats or coerced settlementsdue to fraud and

deceit in response to threats of physical violence or economic injury does not legitimize the defendants's actions in these matters before the court. Any suggestion of consent or compliance is a direct product of the extortion and sideline acts of extortion under the color of law. Plaintiff has been harmed physically and financially with acts of blackmail and extortion, to include but not limited to extortion under the color of law with even warrantless searches by Wong, Kaufer and Deal of plaintiffs office and residence. Discovery in legal proceedings have revealed the settlements obtained were obtained by fraud, perjury, deceit and material misrepresentations. RICO violations with Hobbs Act violations compounds the outrageous misconduct that shocks the conscious and defies the intellect.

60) The economic damages, slander and defamation of character facilitated by fraud, deceit and material misrepresentations are impacted with the revenues lost as a result of the company being exploited, mismanaged, unlawful re-edit and copyright violations made to the feature film, "Forget About It", to include but not limited to the finished film television production titles being held ransom by the defendants and consequently revenues from those productions. Loss of film funding on current and future productions because of the fraud, slander and material misrepresentations made by the defendants directly and under the color of law damage plaintiff.

### iii Extortion Under Color of Official Right

61) Extortion under color of official right occurs when an agent of the

government uses his or ner legitimate governmental powers to obtain an illegitimate objective. The number of violations will be determined at the time of trial by jury. These pleadings meet the overt act requirements and the felony violation of the federal officer, co-defendants in making plaintiffs identity known as a Confidential Informant violates the trust and credibility of city, county, state and the federal law enforcement offices of the Los Angeles Police Department, San Bernardino County Sheriff Department, , CA Department of Justice, Federal Bureau of Investigation, Internal Revenue Service and those known and unknown, represented in the misconduct of the agents involved that includes Wong, Kaufer, Deal, Quinn, MacAllister, Vining, Escott, Hunter, Piteski, Medrano, Dillard, Ortanez, Williams, N,. Williams, Bagnolli and others known and unknown, John Does 1 through 50.

62) In violation of federal law Immigration and Customs Enforcement Personnel Herbert Kaufer Jeffrey J. Deal, James Wong revealed Plaintiffs identity to the Bonanno crime family as an FBI Confidential Informant when unlawfully released by the FBI. Herbert Kaufer also sent via government letterhead and facsimile receipt signatures of Plaintiff to forger Kimberley Dawn Lebel while Kaufer and his subordinate, Jeffrey Deal obstructed justice in Saquella, Kates and Bonanno being investigated and prosecuted. Kaufer and Deal personally, in their official government capacities stopped Wells Fargo, The Phoenix office of the Federal Bureau of Investigation, Securities Exchange Commission, Nevada Secretary of State, Arizona Attorney General and the Los Angeles Police Department from investigating and prosecuting the Bonanno crime activities, forgeries and check kiting schemes to include but not limited to the forged signatures of financial, business, corporate and stock certificates with the forged

1 signatures of Plaintiff BJ Davis. Los Angeles Police Officers Nate Williams,

2 Keith Williams and John Bagnolli obstructed justice and aided and abetted a

3 racketeering enterprise after being enlisted by Kaufer and Deal in the department

4 to facilitate criminal activities under the color of law. Plaintiffs identity as a

5 Confidential Informant was illegally revealed in violation of the IDENTITIES

6 PROTECTION ACT of 1982 (Exhibit '5 ' - Kaufer reveals to Kates FBI status)

7

8      63) In violation of federal law Immigration and Customs Enforcement

9 Personnel Herbert Kaufer, Jeffrey J. Deal, James Wong revealed Plaintiffs identity

10 to the Bonanno crime family as an FBI Confidential Informant. Herbert Kaufer

11 also sent via government letterhead and facsimile receipt signatures of Plaintiff to

12 forger Kimberley Dawn Lebel while Kaufer and his subordinate, Jeffrey Deal

13 obstructed justice in Saquella, Kates and Bonanno being investigated and

14 prosecuted. Kaufer and Deal personally, in their official government capacities

15 solicited other city, county, state and federal agencies to investigate and prosecute

16 plaintiff that is ongoing. Kaufer, Deal and Wong have exerted all of the resources

17 of their federal offices under the color of law to contrive and enlist other legal,

18 professional and personal attacks against plaintiff by the Internal Revenue Service

19 (criminal and civil divisions), Federal Bureau of Investigation (Phoenix, AZ, Palm

20 Springs, CA, Los Angeles, CA, San Diego, CA, Ventura, CA field offices), Los

21 Angeles Police Department, Los Angeles County District Attorneys office,

22 Arizona Attorney Generals office, Maricopa County District Attorneys Office,

23 Phoenix Police Department, Mesa Police Department, San Diego County District

24 Attorney, San Diego Police Department, , SBCSD, CA Department of Justice,

25 San Bernardino County Sheriff Department, United States Attorney Generals

26 offices. The government agencies elected to ignore complaints against the

27

28                                  43

Bonanno family and assist Kaufer, Deal and Wong in their conspiracy to divert attention away form the prohibited racketeering enterprises and focus on plaintiff and his family members. Plaintiffs identity as a Confidential Informant was illegally revealed in violation of the IDENTITIES PROTECTION ACT of 1982 (Exhibit '9 ' - Kaufer Fax to Kates with Plaintiff's multiple signatures).

64) James Wong in his official capacity having evidence and or information contrary to his material misrepresentations and facts, Wong solicited the AZ Attorney General Terry Goddard to maliciously prosecute plaintiff for contrived and fraudulent allegations about plaintiff. Wong references a plaintiff FBI number in the correspondence that will be subpoenaed in discovery as this could be the "CI" file that was privileged and confidential.  Plaintiffs identity as a Confidential Informant was illegally revealed in violation of the FEDERAL IDENTITIES PROTECTION ACT of 1982 (Exhibit '7 ' - Wong Letter to AG Goddard).

65) Herbert Kaufer, Jeffrey Deal, James Wong and Susan Boutwell conspired to obstruct justice and make material misrepresentations under the color of law to deny plaintiff and his family members due process and economic advantages while being slandered and defamed to aid and abet prohibited racketeering enterprises of the Salvatore "Bill" Bonanno crime family. Boutwell referenced film and television star Brittany Murphy to slander and defame plaintiff and his family members while knowing the representations made were perjured, falsified and designed to conspire with elements of the Bonanno crime family in the blackmail, coercion and extortion of plaintiffs film company and titles.  Susan Boutwell, A Customs and Border Protection officer who perjured herself during plaintiffs wife's EEOC hearing in which Davis prevailed conspires with Kaufer and

1 Deal to attack Julia Davis and plaintiff as validated in audio tape recordings and
2 surveillance video.

3

4     66) Julia Davis is a former federal officer, a whistleblower with protected
5 disclosures who made national security breach revelations known that embarrassed
6 Customs and Border Protection management while exposing Kaufer and Deal's
7 incompetence and corruption. Kaufer and Deal headed two failed selective and
8 malicious prosecutions of the Davis' that was subsequently dismissed before
9 motions were filed to become part of court records exposing gross government
10 misconduct in the huge agency cover-up in which Julia Davis wins a sexual
11 harassment case.

12

13    67) Retaliation against the former officer who prevailed in an EEOC case
14 against the agency. The case of sexual harassment shelved by Kaufer and Deal was
15 confirmed by the Department of Homeland Security, Office Inspector General
16 Elizabeth Redman and where the EEOC Judge Daniel Leach ruled the agency
17 (Kaufer and Deal - *Emphasis added*) acted illegally towards Julia Davis. Kaufer
18 and Deal were compensated for their contributions by Kates on behalf of the
19 Bonanno crime family that defies the intellect. Wilkie v Robbins, U.S., 2007 WL
20 1804315 (2007). Kaufer and Deal interfered with Julia Davis' right to work and
21 Phase II hiring as an FBI agent. It should be noted that Deal was a former FBI
22 agent but left the agency for a "lesser" agency and plaintiff seeks those personnel
23 records.

24

25    68) Plaintiffs Confidential informant status was revealed to members of the
26 Bonanno crime family by Kaufer and Deal as conveyed by the Phoenix and Los

27

28                                          45

Angeles field offices of tne FBI, agents Ray Piteski, Arnie Medrano, John Vininig, Brenda Dillard, Mark Hunter, Mike Escott, Sherry MacAllister and John Quinn, all of whom obstructed justice and chose to ignore irrefutable evidence, audio recordings and video surveillance of Salvatore "Bill" Bonanno and others extorting plaintiff while they were aiding and abetting organized racketeering activities under the color of law. Contrary to Plaintiff having been made a Confidential Informant by the Federal Bureau of Investigation with the code name, "Fall Guy", plaintiff and his family were subjected to physical violence, extortion, fraud, theft, slander, defamation of character, and interference with economic advantage, right to work and income earning ability. The Federal Bureau of Investigation took plaintiffs formal complaints, then solicited his participation as a "CI" only to violate the trust and confidentiality after conspiring with Kaufer and Deal to expose Plaintiffs identity as a Confidential Informant in violation of the IDENTITIES PROTECTION ACT of 1982.

69) Kaufer, Deal with Kates acting on behalf of the racketeering enterprise recruited Internal Revenue Service - Agent Angie Ortenaz to initiate an investigation against the plaintiff and his family to harass, selectively and maliciously investigate and prosecute as per Kaufer and Deal's own written communications with Kates as an agent for the Bonanno family and prohibited racketeering enterprises. This added legal and financial burden would further diminish plaintiffs ability to protect himself and his family from the combined attacks and efforts of the co-defendants forcing plaintiff into compromised situations in order to extort plaintiff.

### iv. Extortion vs. Legitimate Exercise of Government Power

46

70) Kaufer and Deal conspired with FBI Agent Mark Hunter to create a bias and prejudice against Julia Davis in her Phase III hiring with the Federal Bureau of Investigation. Kaufer, Deal and Hunter exchanges notes on how "to get Julia Davis". Instead of processing her employment application Hunter, Kaufer and Deal are solicting AUS Attorneys Karen Hewitt and as many as eighteen "18" other AUS Attorneys to "create " charges against plaintiff and his family members per Kaufer's own handwritten notes and records (*Emphasis added*).

71) Kaufer hoping to attack Plaintiff even attacked family members and contacted the Los Angeles County Sheriff Department where Julia Davis had successfully passed two polygraphs in the course of law enforcement employment asking the polygraph expert to "change" his findings and falsify a passing report to a "failing" report per Kaufer's own handwritten notes (*Emphasis added*) . Herbert Kaufer and Jeffrey Deal in addition to the Mafia Five families are a threat to society and to plaintiff. There is no allegation or contention in these representations to the court as Herbert Kaufer's own daily diary shows the true nature of this criminal with a badge feeding off of the taxpayers dollars when he should be housed with Michael Ralph Saquella in federal prison. Criminal deeds by criminals are expected, criminal acts by law enforcement officers like Herbert Kaufer, James Wong and Jeffrey Deal is an outrage, a need and demand for change.

72) Kaufer and Deal empowered the Bonanno crime family and "strawmen" of this prohibited racketeering enterprises by divulging information detrimental regarding plaintiff to be used in civil proceedings while seeking two selective and malicious prosecutions of Plaintiff and his spouse under the color of of law while

protecting RICO violations. Kaufer and Deal encouraged the Bonanno group to do as they will with the company and film since plaintiff would be in prison and Julia Davis deported. Kaufer and Deal would then protect all or most of the organized crime group. Only plaintiffs tenacity prevails and keeps the investigations and convictions active. Currently the SEC is investigating Kates and the remaining Bonanno groups, Tarantola awaits indictment and the LAPD is investigating the dirty deeds of those officers. The Office of Inspector Genral for the DHS refers the matter back to the very subjects that are to be investigated. Herbert Kaufer and Jeffrey Deal.

73 ) Plaintiffs identity as a Confidential Informant was illegally revealed in violation of the FEDERAL IDENTITIES PROTECTION ACT of 1982. Two selective and malicious prosecutions were instigated by Kaufer, Deal and Wong that were dismissed by the government's own Ex Parte filing prior to Motions To Dismiss were filed and becoming public record based on Gross government misconduct. Per personal service and certified US Mail as well as notices by Michael Proctor of the law firm Caldwell, Leslie & Proctor to the US attorneys office all knew in advance that the plaintiff had been victimized by the Bonanno group and the US Attorneys office was acutely aware of the crimes committed by Kaufer, Deal and other federal agents and did nothing. The Screen Actors Guild and Screen Actors Guild Producers Health Plan conspired with Kaufer, Deal, Kates and others to make material misrepresentations and to release money, private information in violation of plaintiffs privacy and rights. SAG has thirty years of continued wrong doing in retaliating against plaintiff for his exposing the union's corruption, bias and other acts that are memorialized on audio tape. Their paths crossing with Kaufer and Deal open the conspiracy and doors of opportunity all the

wider.

Plaintiff was denied "due process of law" when attempting to litigate in civil court issues regarding the film "Forget About It" and company. In the Central Federal District Court of California Judge Alvin Howard Matz who is now being investigated by the 9th Circuit Court for judicial misconduct, Judicial Committee Case No. 07-89141 presided in the now dismissed criminal case and took jurisdiction over the civil matter involving Plaintiff's company and film, Case CV06-3800 "before the criminal case was closed" (*Emphasis added*).

74) In this unprecedented and landmark, unethical action, Judge Matz stated on the record that there was no mob activity in the case while knowing that Plaintiff was a "CI" for the FBI regarding the Bonanno crime family. The Judge being biased and predisposed denied Plaintiff fair and equal protection under the law and assisted the Bonanno crime family into coercing Plaintiff into signing a settlement agreement, one of four, all of which were never complied with as drafted by mafia attorney Michael Gardiner and negotiated by Bonanno's nephew mafia made-man nephew Anthony Tarantola representing Kates, Saquella and a bevy of "strawmen". Under the color of law, a penalty of one thousand ($1,000) dollars a day was imposed upon Plaintiff to pay based on an alleged contempt of court that Plaintiff never engaged in or was party to. The court dockets and records were falsified and the Judge allowed the Bonanno attorney, co-defendants in these proceedings to perjure their testimony in court with impunity. It should be noticed that Kaufer, Wong and Deal were the agents involved in the contrived and now dismissed cases where there were findings of factual innocence on the plaintiffs

1  part.

2

3      75) Plaintiff filed several formal complaints that the council took very

4  seriously based on the actions by Judge Matz under the color of the law in direct

5  violation of the constitution and Canonized Code of Judicial Conduct.  This is a

6  recurring role from that court as cited in Paul v. Clinton where comparable

7  outrageous conduct occurred beyond the scope of the law and due process in

8  Judicial Committee Case No. 07-89141.  Herbert Kaufer and Jeffrey Deal's

9  handwritten notes describe their knowledge and participation in this prohibited

10  racketeering enterprises and individuals under the color of law. The existence of

11  the RICO predicate is Copyright Infringement Anti-Counterfeiting Consumer

12  Protection Act of 1996, Pub. L. No. 104-153 § 3, 110 Stat. 1386 (adding criminal

13  copyright infringement, 18 U.S.C. § 2319, is added to the RICO list 18 U.S.C. §

14  1961(1)(B)). Defendants clearly violated copyrighted materials from feature films,

15  artwork, photo likeness by means of forgery and extortion perpetrated by Noel

16  Kendall, Harkins Theaters, Sedona Theaters, Allumination, Jonathan Dimock, Los

17  Angeles Police Department, San Bernardino County Sheriff Department, Federal

18  Bureau of Investigation, Securities Exchange Commission, Nevada Secretary of

19  State, Misti Reynolds, Phil Young, First American Stock Transfer, Colonial Stock

20  Trading Company, Phil Young, Brian Kos, David Stocker, Steve Berg, Michael

21  Saquella, Robert Braner, Melissa Welch-Blue, Robert Laskowski, William Tannaz,

22  Herb Goldman, Donna Steward, Bill Bonanno, Herbert Kaufer, James Wong,

23  Jeffrey J. Deal, Rick Fleming, Susan Boutwell, Anthony Tarantola, Michael

24  Gardiner, Kimberley Dawn Lebel aka Kates, William Ward, Don Anderson,

25  Timothy Stutler, Caroline J. Clark, Michelle Kenney, Stephen Montes, A. Howard

26  Matz, Nicholas Browning, Wells Fargo, Gloria Luna, Brian Driscoll, Nils

27

28                                              50